1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12    DANIEL R. BASHAM and CAROLE          NO. 2:10-cv-96 WBS GGH
      BASHAM,

13
                   Plaintiffs,             MEMORANDUM AND ORDER RE:
14                                         MOTION TO DISMISS
             v.
15
      PACIFIC FUNDING GROUP, a
16    California business entity,
      form unknown; MORTGAGE
17    ELECTRONIC REGISTRATION
      SYSTEMS, INC., a Delaware
18    corporation; WELLS FARGO HOME
      MORTGAGE, INC., a California
19    corporation, dba AMERICA'S
      SERVICE COMPANY; CITIBANK N.A.
20    AS INDENTURE TRUSTEE FOR BSARM
      2007-2, a business entity,
21    form unknown; and NDEX WEST,
      L.L.C., a Delaware
22    corporation,

23                 Defendants.
      _____/
24

25                          ----oo0oo----

26

27           Plaintiffs Daniel R. Basham and Carole Basham brought

28    this action against defendants Pacific Funding Group ("Pacific"),

                                   1

1  Mortgage Electronic Registration Systems, Inc. ("MERS"), Wells

2  Fargo Home Mortgage, Inc., dba America's Service Company ("ASC"),

3  Citibank N.A. as Indenture Trustee for BSARM 2007-2 ("Citibank")

4  and NDEX West, L.L.C. ("NDEX") alleging various federal and state

5  claims arising out of plaintiffs' mortgage transaction.

6  Presently before the court is defendant ASC's motion to dismiss

7  the First Amended Complaint ("FAC") pursuant to Federal Rule of

8  Civil Procedure 12(b)(6).  (Docket No. 30.)

9  I. Factual and Procedural Background

10          On or about September 27, 2005, plaintiffs obtained a

11  loan from the now-bankrupt subprime loan originator and reseller

12  American Home Mortgage ("AHM") in order to refinance their home,

13  located at 110 Bewicks Circle in Sacramento, California (the

14  "Subject Property").  (FAC ¶ 15.)  This loan was secured by a

15  Deed of Trust on the property.  (Req. for Judicial Notice ("RJN")

16  (Docket No. 39) Ex. A.)  The Deed of Trust listed North American

17  Title Company as Trustee, American Brokers Conduit as the lender,

18  and MERS as the nominal beneficiary for the lender and the

19  lender's successors and assigns.  (Id.)

20          In October 2008, plaintiffs began experiencing

21  financial problems and defaulted on their mortgage; sometime

22  thereafter they allegedly contacted ASC to discuss loan

23  modification.  (Id.)  In May 2009, plaintiffs requested a loan

24  modification from ASC which was subsequently denied.  (Id. ¶ 19.)

25  NDEX recorded a Notice of Default on July 8, 2009.  (RJN Ex. B.)

26  In September 2009, plaintiffs submitted a second loan

27  modification application to ASC.  This application was also

28  denied.  (FAC ¶ 20.)

1   A Trustee's sale of plaintiffs' property was scheduled
2   for January 14, 2010, but plaintiffs were granted a temporary
3   restraining order and preliminary injunction against the sale.
4   (See Mot. to Dismiss (Docket No. 38), at 4; Docket Nos 1, 24-25.)
5   Plaintiffs initiated this action on January 13, 2010, and filed a
6   First Amended Complaint ("FAC") on April 5, 2010.  (Docket Nos.
7   1, 34.)

8   II. Discussion

9   To survive a motion to dismiss, a plaintiff must plead
10  "only enough facts to state a claim to relief that is plausible
11  on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
12  (2007).  This "plausibility standard," however, "asks for more
13  than a sheer possibility that a defendant has acted unlawfully,"
14  and where a complaint pleads facts that are "merely consistent
15  with" a defendant's liability, it "stops short of the line
16  between possibility and plausibility."  Ashcroft v. Iqbal, 566
17  U.S. ---, ----, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting
18  Twombly, 550 U.S. at 556-57).  In deciding whether a plaintiff
19  has stated a claim, the court must assume that the plaintiff's
20  allegations are true and draw all reasonable inferences in the
21  plaintiff's favor.  Usher v. City of Los Angeles, 828 F.2d 556,
22  561 (9th Cir. 1987).  However, the court is not required to
23  accept as true "allegations that are merely conclusory,
24  unwarranted deductions of fact, or unreasonable inferences."  In
25  re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

26  In general, a court may not consider items outside the
27  pleadings in deciding a motion to dismiss, but may consider items
28  of which it takes judicial notice.  Barron v. Raich, 13 F.3d

1370, 1377 (9th Cir. 1994).  A court may take judicial notice of
facts "not subject to reasonable dispute" because they are either
"(1) generally known within the territorial jurisdiction of the
trial court or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be
questioned."  Fed. R. Evid. 201.  ASC requests that the court
take judicial notice of the following publicly recorded documents
associated with the Subject Property: (1) the Deed of Trust, (2)
the Notice of Default and Election to Sell Under Deed of Trust,
(3) the Assignment of Deed of Trust, (4) the Substitution of
Trustee, and (5) the Notice of Trustee's Sale.  (RJN Exs. A-E
(Docket No. 39).)  The court will take judicial notice of these
documents, since they are matters of public record whose accuracy
cannot be questioned.  See Lee v. City of Los Angeles, 250 F.3d
668, 689 (9th Cir. 2001).

A.   Negligence Per Se

Plaintiffs' first cause of action for negligence per se
alleges that all defendants are negligent because they violated
California Civil Code sections 2923.5 and 2924.  (FAC ¶ 29.)
Negligence per se is an evidentiary presumption that a party
failed to exercise due care if:

> (1) he violated a statute, ordinance, or regulation of
> a public entity;
>
> (2) the violation proximately caused death or injury to
> a person or property;
>
> (3) the death or injury resulted from an occurrence of
> the nature within the statute, ordinance, or regulation
> was designed to prevent; and
>
> (4) the person suffering the death or the injury to his
> person or property was one of the class of persons for
> whose protection the statute, ordinance, or regulation

1  was adopted.

2  Cal. Evid. Code § 669.  California Civil Code section 2924

3  provides a "comprehensive statutory framework" that governs the

4  non-judicial foreclosure process.  Moeller v. Lien, 25 Cal. App.

5  4th 822, 834 (1994); see Cal. Civ. Code § 2924 (listing, inter

6  alia, the requirements for a properly filed notice of default and

7  the timing and process for the foreclosure sale).  Section 2923.5

8  regulates who can file and when and how a notice of default can

9  be filed to initiate a non-judicial foreclosure.  Cal. Civ. Code

10  § 2923.5 (requiring, inter alia, that the mortgagee, beneficiary,

11  or authorized agent must use due diligence contact the borrower

12  to explore options to avoid foreclosure).

13       The negligence per se doctrine does not establish a

14  cause of action distinct from negligence.  Cal. Serv. Station &

15  Auto. Repair Ass'n v. Am. Home Assurance Co., 62 Cal. App. 4th

16  1166, 1178 (1998) ("[A]n underlying claim of ordinary negligence

17  must be viable before the presumption of negligence of Evidence

18  Code section 669 can be employed.").  Rather, the negligence per

19  se doctrine treats a statutory violation as evidence of

20  negligence.  See Sierra-Bay Fed. Land Bank Assn. v. Superior

21  Court, 227 Cal. App. 3d 318, 333 (1991) ("[I]t is the tort of

22  negligence, and not the violation of the statute itself, which

23  entitles a plaintiff to recover civil damages.  In such

24  circumstances the plaintiff is not attempting to pursue a private

25  cause of action for violation of the statute; rather, he is

26  pursuing a negligence action and is relying upon the violation of

27  a statute, ordinance, or regulation to establish part of that

28  cause of action.").  Plaintiffs are not entitled to a presumption

of negligence in the absence of an underlying negligence action. <u>Coyotzi v. Countrywide Fin. Corp.</u>, No. 09-1036, 2009 WL 2985497, at *6 (E.D. Cal. Sept. 15, 2009) (quoting <u>Quiroz v. Seventh Ave. Ctr.</u>, 140 Cal. App. 4th 1256, 1285 (2006)).

The FAC simply makes a general allegation as to five defendants, with no factual elaboration as to how ASC might have violated either section 2923.5 or section 2924.  Indeed, plaintiffs generally allege that ASC had no authority to modify their loan, yet their first cause of action alleges that defendants failed to comply with section 2923.5's foreclosure avoidance and workout plan requirements to avoid the foreclosure of plaintiffs' property. (<u>See</u> FAC ¶¶ 18-21, 29, 31, 33.)  This general allegation gives ASC insufficient notice of whether they have committed any conduct to violate section 2923.5 or section 2924, and ASC should not be forced to guess whether it is individually liable for this conduct.  <u>See</u> <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

B.   <u>Negligence</u>

Plaintiffs' second cause of action for negligence against ASC is based on the alleged violation of the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-09, 6803(a)(3), (c)(3) and 66 Federal Register 8616.  (FAC ¶¶ 41, 43.)  The Gramm-Leach-Bliley Act provides that financial institutions have an obligation to protect the security and confidentiality of their customers' nonpublic personal information, and requires such institutions regularly to disclose to their customers their information security policies.  15 U.S.C. §§ 6801, 6803(a)(3).  As previously

6

explained, the violation of a statute can be used to satisfy an element of a negligence cause of action.  <u>See</u> <u>Sierra-Bay</u>, 227 Cal. App. 3d at 333.  Plaintiffs allege that ASC violated the Gramm-Leach-Bliley Act and its duty of care to plaintiffs when it failed to safeguard plaintiffs' loan modification packet and the sensitive and confidential information it contained.  (FAC ¶ 41.)

Plaintiffs do not, however, allege any facts that indicate they have been harmed by ASC's security failings. Rather, the FAC merely alleges that ASC's alleged loss of plaintiffs' documents "poses a potential anticipated threat of dissemination and disclosure of plaintiffs' personal nonpublic information."  (FAC ¶ 41.)  "To be actionable, harm must constitute something more than nominal damages, speculative harm, or the threat of future harm--not yet realized."  <u>Aguilera v.</u> <u>Pirelli Armstrong Tire Corp.</u>, 223 F.3d 1010, 1015 (9th Cir. 2000).  Plaintiffs' further assertion that "as a direct and proximate result of wrongful conduct described herein, plaintiffs have suffered compensable damages according to proof" epitomizes the type of conclusory statement that fails Rule 8's pleading standard.  (FAC ¶ 44); <u>see Iqbal</u>, 566 U.S. ---, 129 S. Ct. 1937 (2009).

C.   <u>Truth in Lending Act</u>

Plaintiffs allege that ASC, among other defendants, violated TILA 15 U.S.C. §§ 1601-1667(f) and 12 C.F.R. § 226.23 by not informing plaintiffs of their right to rescind, by failing to acknowledge plaintiffs' alleged rescission, and by failing to inform plaintiffs of alleged "kickbacks paid to [Pacific]."  (FAC ¶ 47.)

7

1        1.   <u>Rescission Claim</u>

2        In a consumer credit transaction where the creditor

3   acquires a security interest in the borrower's principal

4   dwelling, TILA provides the borrower with "a three-day

5   cooling-off period within which [he or she] may, for any reason

6   or for no reason, rescind" the transaction.  <u>McKenna v. First</u>

7   <u>Horizon Home Loan Corp.</u>, 475 F.3d 418, 421 (1st Cir. 2007)

8   (citing 15 U.S.C. § 1635).  A creditor must "clearly and

9   conspicuously disclose" this right to the borrower along with

10  "appropriate forms for the [borrower] to exercise his right to

11  rescind."  15 U.S.C. § 1635(a).  If a creditor fails to provide

12  the borrower with the required notice of the right to rescind,

13  the borrower has three years from the date of consummation to

14  rescind the transaction.  15 U.S.C. § 1635(f); <u>see</u> 12 C.F.R. §

15  226.23(a)(3) ("If the required notice or material disclosures are

16  not delivered, the right to rescind shall expire 3 years after

17  consummation.").  "[Section] 1635(f) completely extinguishes the

18  right of rescission at the end of the 3-year period."  <u>Beach v.</u>

19  <u>Ocwen Fed. Bank</u>, 523 U.S. 410, 412, (1998); <u>see also</u> <u>Miquel v.</u>

20  <u>Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir. 2002)

21  ("[S]ection 1635(f) represents an 'absolute limitation on

22  rescission actions' which bars any claims filed more than three

23  years after the consummation of the transaction." (quoting <u>King</u>

24  <u>v. California</u>, 784 F.2d 910, 913 (9th Cir. 1986))).

25       Plaintiffs signed the deed of trust on September 19,

26  2005 (RJN Ex. A), and filed this action on January 13, 2010, more

27  than three years after closing.  Because tolling is not available

28  for a claim for rescission under TILA, plaintiffs' rescission

8

claim must be dismissed.

Furthermore, the Ninth Circuit has held that rescission under TILA "should be conditioned on repayment of the amounts advanced by the lender." Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1170 (9th Cir. 2003) (emphasis in original).  District courts in this circuit have dismissed rescission claims under TILA at the pleading stage based upon the plaintiff's failure to allege an ability to tender loan proceeds.  See, e.g., Garza v. Am. Home Mortgage, No. 08-1477, 2009 U.S. Dist. LEXIS 7448, at *15 (E.D. Cal. Jan. 27, 2009) (stating that "rescission is an empty remedy without [the borrower's] ability to pay back what she has received"); Ibarra v. Plaza Home Mortgage, No. 09-3926, 2009 U.S. Dist. LEXIS 73299, at *4 (C.D. Cal. July 29, 2009); Ing Bank v. Korn, No. 09-124, 2009 U.S. Dist. LEXIS 73329, at *7 (W.D. Wash. May 22, 2009).  Plaintiffs have not alleged any facts indicating that they are able to tender sufficient funds to repay the loan principal.  Without such facts, plaintiffs cannot receive the equitable remedy of rescission.

### 2. Kickbacks Disclosure Claim

Plaintiffs' claim that they were not informed of the kickbacks paid to Pacific is not an actionable claim under TILA. TILA grants private remedies for failure to properly disclose the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule or the three day right to rescind.  15 U.S.C. § 1638(a)(2)-(6), (9).  It does not grant a private remedy for failure to disclose kickbacks. Furthermore, plaintiffs have not pleaded any facts that show how ASC, who was not involved in the origination of their loan, could

9

1  be liable for failing to disclose kickbacks that allegedly

2  occurred at that time.  As such, it fails to cross the line

3  between possibility and plausibility as required under Iqbal.

4  Accordingly, the court will grant ASC's motion to dismiss

5  plaintiffs' TILA claim.

6      D.   Real Estate Settlement Procedures Act

7           Plaintiffs complain that all defendants violated the

8  Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§

9  2601-2617, in two ways: (1) by failing to respond to plaintiffs'

10 Qualified Written Request ("QWR") and (2) "by receiving money

11 and/or other things of value for referrals of settlement service

12 business . . . including secret kickbacks and yield spread

13 premiums to loan brokers such as [Pacific]."  (FAC ¶ 55.)  As a

14 preliminary matter, the court notes that plaintiffs' fourth cause

15 of action fails to distinguish among the defendants and

16 adequately put ASC on notice as to how it might have violated

17 RESPA.  See Associated Gen. Contractors of Cal., Inc., 459 U.S.

18 at 526.  This is reason enough for the court to grant ASC's

19 motion to dismiss.

20           1.   Failure to Respond to Qualified Written Request

21           RESPA provides that borrowers must be provided certain

22 disclosures relating to the mortgage loan settlement process.

23 See 12 U.S.C. § 2601.  Section 2605 of RESPA relates to the

24 disclosures and communications required regarding the servicing

25 of mortgage loans, and provides that loan servicers have a duty

26 to respond to QWRs from borrowers asking for information relating

27 to the servicing of their loans.  12 U.S.C. § 2605(e).  Under

28 RESPA, lenders of federally related mortgage loans must disclose

10

whether servicing of a loan may be assigned, sold or transferred to loan applicants.  12 U.S.C. § 2605(a).  Additionally, borrowers may send QWRs under RESPA to loan servicers for information relating to the servicing of their loan.  12 U.S.C. § 2605(e)(1).  Loan servicers have sixty days after the receipt of a QWR to respond to the borrower inquiry.  12 U.S.C. § 2605(e)(2).

Section 2605(f) imposes liability on servicers that violate RESPA and fail to make the required disclosures. Although this section does not expressly make a showing of damages part of the pleading standard, "a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." <u>Allen v. United Fin. Mortgage Corp.</u>, No. 9-2507, 2010 U.S. Dist. LEXIS 26503 (N.D. Cal. Mar. 22, 2010).  Alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.  <u>Hutchinson v. Del. Sav. Bank, FSB</u>, 410 F. Supp. 2d 374 (D.N.J. 2006).

This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure to respond or give notice has caused them actual harm.  <u>See</u> <u>Singh v. Wash. Mut. Bank</u>, No. 09-2771, 2009 U.S. Dist. LEXIS 73315, *16, 2009 WL 2588885 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because, "[i]n particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees") (citations omitted).  Plaintiffs here have not offered any

11

1  facts to support that ASC's failure to respond to their QWR
2  resulted in pecuniary damages.  Plaintiffs' claim that they "have
3  suffered and continue to suffer compensable damages" (FAC ¶ 58)
4  is conclusory and fails even under a liberal pleading standard.

5           2.   Kickbacks and Illegal Fees

6           RESPA § 2607 prohibits any person from giving or
7  accepting "any fee, kickback or thing of value pursuant to any
8  agreement or understanding . . . that business incident to or a
9  part of a real estate service . . . shall be referred to any
10 person," and from accepting any unearned fee in relation to a
11 settlement service.  12 U.S.C. § 2607(a), (b).  Plaintiffs'
12 allegation that "defendants" gave or received "secret kickbacks
13 and yield spread premiums to loan brokers" (FAC ¶ 57) lacks any
14 factual enhancement whatsoever.  Plaintiffs do not explain what
15 these kickbacks were, when they occurred, or whether ASC
16 specifically even received them.  ASC should not be forced to
17 guess how it violated RESPA.  Gavin v. Trombatore, 682 F. Supp.
18 1067, 1071 (N.D. Cal. 1988).  Plaintiffs' allegations are exactly
19 the type of "naked assertion[s]" devoid of "further factual
20 enhancement" that fail to meet the pleading standard.  Iqbal, 566
21 U.S. --- at ----, 129 S. Ct. 1937, 1949 (2009)(citation omitted).

22          Moreover, any RESPA kickback claim must be brought
23 within one year of the violation.  See 12 U.S.C. § 2614; Edwards
24 v. First Am. Corp., 517 F. Supp. 2d 1199, 1204 (C.D. Cal. 2007);
25 Blaylock v. First Am. Title Ins. Co., 504 F. Supp. 2d 1091, 1106
26 (W.D. Wash. 2007).  Plaintiffs' loan was executed on September
27 19, 2005.  As any alleged kickbacks would have occurred at this
28 time--more than four years before this suit began--the RESPA

12

1 claim is time barred.  For the reasons discussed above,

2 plaintiffs' RESPA claims must be dismissed.

3     E.    Breach of Contract

4          The elements of a cause of action for breach of

5 contract are (1) the existence of the contract, (2) performance

6 by the plaintiff, (3) breach by the defendant, and (4) damages.

7 First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745

8 (2001).  Plaintiffs allege that ASC entered into an oral

9 agreement with them to "provide plaintiffs with a loan

10 modification at a fixed rate . . . so long as [plaintiffs] paid

11 down some of their existing debt" (FAC ¶¶ 60-61) and that ASC

12 breached this contract by failing to facilitate the approval of

13 plaintiffs' promised loan modification.

14          A contract to modify a loan must be in writing.  "A

15 mortgage or deed of trust comes within the statute of frauds."

16 Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2, 167 Cal. App. 4th

17 552, 552 (2008).  As any "agreement to modify a contract that is

18 subject to the statute of frauds is also subject to the statue of

19 frauds," a loan modification also requires a written agreement.

20 Id. at 552 (citing Cal. Civ. Code § 1698); see Justo v. Indymac

21 Bancorp, No. 9-1116, 2010 U.S. Dist. LEXIS 22831 (C.D. Cal. Feb.

22 19, 2010) (dismissing with prejudice a claim that defendant

23 breached an oral contract to modify plaintiff's loan and prevent

24 foreclosure proceedings).  Plaintiffs do not allege that there is

25 any written agreement to modify the terms of their loan.  Absent

26 a writing, there can be no contract, much less a breach of

27 contract.  Plaintiffs' claim must therefore be dismissed.

28     F.    Breach of the Implied Covenant of Good Faith and Fair

13

1    Dealing

2        Under California law, every contract "imposes upon each

3    party a duty of good faith and fair dealing in its performance

4    and its enforcement." McClain v. Octagon Plaza, LLC, 159 Cal.

5    App. 4th 784 (2008) (quoting Carma Developers, Inc. v. Marathon

6    Dev. Cal., Inc., 2 Cal. 4th 342, 371 (1992)).  The covenant "is

7    based on general contract law and the long-standing rule that

8    neither party will do anything which will injure the right of the

9    other to receive the benefits of the agreement." Waller v. Truck

10   Ins. Exchange, Inc., 11 Cal. 4th 1 (1995).

11       Plaintiffs allege that ASC breached the implied

12   covenant of good faith and fair dealing by "failing to provide

13   the promised loan modification approval." (FAC ¶ 68.)  The

14   implied covenant of good faith and fair dealing "cannot impose

15   substantive duties or limits on the contracting parties beyond

16   those incorporated in the specific terms of their agreement."

17   Agosta v. Astor, 120 Cal. App. 4th 596, 607 (2004) (internal

18   citation omitted).  "Absent [a] contractual right . . . the

19   implied covenant has nothing upon which to act as a supplement,

20   and should not be endowed with an existence independent of its

21   contractual underpinnings." Waller, 11 Cal. 4th at 36 (internal

22   citations omitted).  Plaintiffs failed to adequately plead that a

23   contract to modify the loan agreement existed.  The court must

24   therefore grant ASC's motion to dismiss.

25       Plaintiffs also claim that defendant breached the

26   implied covenant of good faith and fair dealing by violating

27   California Civil Code section 2923.5.  A contract, not a statute,

28   must be the basis for an implied covenant of good faith and fair

14

1   dealing, <u>id.</u>, nor have they articulated how a failure to comply

2   with section 2923.5 frustrated plaintiffs' rights under the loan

3   contract.   Any alleged independent violation of section 2923.5

4   has been inadequately plead as described above.   Plaintiffs'

5   claim for breach of the implied covenant of good faith and fair

6   dealing against ASC will therefore be dismissed.

7        G.   <u>California's Unfair Competition Law</u>

8             California's Unfair Competition Law ("UCL"), Cal. Bus.

9   & Prof. Code §§ 17200-17210, prohibits "any unlawful, unfair, or

10  fraudulent business act or practice."  <u>Cal-Tech Commc'ns, Inc. v.</u>

11  <u>L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).   This cause

12  of action is generally derivative of some other illegal conduct

13  or fraud committed by a defendant, and "[a] plaintiff must state

14  with reasonable particularity the facts supporting the statutory

15  elements of the violation."  <u>Khoury v. Maly's of Cal., Inc.</u>, 14

16  Cal. App. 4th 612, 619 (1993).

17            Plaintiffs' claim under the UCL is vague and

18  conclusory, simply alleging that "by engaging in the above-

19  described acts and practice, Defendants have committed one or

20  more acts of unlawful business practices."  (FAC ¶ 78.)

21  Plaintiffs' claim lumps all defendants together and fails to

22  identify any specific act taken by any one of the named

23  defendants.  (<u>See</u> FAC ¶¶ 77-81.)   Such vague and conclusory

24  allegations are insufficient to inform ASC as to its liability.

25  <u>See</u> <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State</u>

26  <u>Council of Carpenters</u>, 459 U.S. 519, 526 (1983); <u>Gauvin</u>, 682 F.

27  Supp. at 1071; <u>see also</u> <u>Lingad v. Indymac Fed. Bank</u>, No Civ.

28  2:09-02347 GEB JFM, --- F. Supp. 2d ----, 2010 WL 347994, at *11

1  (E.D. Cal. Jan. 29, 2010).  The court has already eliminated

2  plaintiffs' other claims which serve as the basis for this cause

3  of action.  Since plaintiffs have failed to state a claim on any

4  of these grounds, and because these grounds appear to be the sole

5  basis for plaintiffs' UCL claim, they by necessity have failed to

6  state a claim against ASC under the UCL. Accordingly the court

7  will grant ASC's motion to dismiss plaintiffs' UCL claim.

8       H.   Quiet Title

9            Plaintiffs cannot sustain a quiet title claim as a

10  matter of law.  The purpose of a quiet title action is to

11  establish one's title against adverse claims to real property.  A

12  basic requirement of an action to quiet title is an allegation

13  that plaintiffs "are the rightful owners of the property, i.e.,

14  that they have satisfied their obligations under the Deed of

15  Trust." Kelley v. Mortgage Elec. Registration Sys., 642 F. Supp.

16  2d 1048, 1057 (N.D. Cal. 2009).  "[A] mortgagor cannot quiet his

17  title against the mortgagee without paying the debt secured."

18  Watson v. MTC Fin., Inc., 2009 U.S. Dist. LEXIS 63997 (E.D. Cal.

19  July 17, 2009).  As plaintiffs concede that they have not paid

20  the debt secured by the mortgage, they cannot sustain a quiet

21  title action against defendants.

22       I.   Declaratory and Injunctive Relief

23            Plaintiffs purport to state a cause of action for

24  declaratory and injunctive relief.  Declaratory and injunctive

25  relief are not causes of action; rather, they are remedies.  See

26  McDowell v. Watson, 59 Cal. App. 4th 1155, 1159 (1997)

27  ("Injunctive relief is a remedy and not, in itself a cause of

28  action") (internal quotation marks omitted); see also Nat'l Union

1   <u>Fire Ins. Co. v. Karp</u>, 108 F.3d 17, 21 (2d Cir. 1997).  Because

2   plaintiffs' other causes of action have been dismissed and

3   declaratory and injunctive relief are not independent claims, the

4   court will dismiss this claim as well.

5       IT IS THEREFORE ORDERED that the motion of defendant Wells

6   Fargo Home Mortgage, Inc., dba America's Service Company, to

7   dismiss the causes of action against it be, and the same hereby

8   is, GRANTED.

9           Plaintiffs have twenty days from the date of this Order

10  to file an amended complaint, if they can do so consistent with

11  this Order.

12  DATED:  July 21, 2010

13

14  _____

15  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

17